BONG WOON LEE, Plaintiff-Appellant, *v.* MASAMITSU KIMURA and BELLE KIMURA, Defendants-Appellees

NO. 7563

CIVIL NO. 53032

OCTOBER 20, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY BURNS, J.

This is an appeal from a judgment filed on June 6, 1979, finding that plaintiff Bong Woon Lee has no interest in two leases, ordering that her complaint for an accounting and partition be dismissed, and ordering her to execute an assignment of all right, title, and interest in the leases to the defendants, Masamitsu and Belle Kimura.

At issue are: (1) whether the essential findings of fact and conclusions of law are clearly erroneous; and (2) whether the trial court erred in not granting a motion for a new trial. We find in the negative on both issues and therefore affirm the judgment.

On or about January 5, 1970, Bong Woon Lee and Masamitsu and Belle Kimura, as lessees, executed two leases, both of which were subsequently recorded. Lee is the mother of Belle Kimura, who is married to Masamitsu Kimura. One lease covered certain properties and improvements owned by Magoon Estate, Limited; the other covered adjoining property and improvements owned by Magoon Brothers, Limited. The leases are substantially identical. Both leases (hereinafter 1970 leases) identify Lee and the Kimuras as co-lessees without allocating any specific percentage of the interest in the leases among them.

The Magoon Estate, Limited's property and improvements had previously been leased to Lee and her husband. The date of said lease was March 13, 1958, and the term was for three years. Following the expiration of the term of said lease, Lee, who had been widowed on July 22, 1961, continued to occupy the property as a tenant-at-will, which tenancy continued until the execution of the 1970 leases.

In 1968, the Building Department of the City and County of Honolulu cited the lessors for unsafe and unhealthy conditions on the properties. Individual tenants were given the option of making repairs at their own expense, and Lee elected to do so. Masamitsu Kimura, who was assisting Lee in managing the property, was largely responsible for effectuating the repairs to the premises to satisfy the Building Department.

From May 1, 1969,[1] through the end of the year, the Kimuras, without objection from Lee, collected and retained all rental income and paid all expenses connected with the property. The Kimuras also obtained their own excise tax license and continued to make necessary repairs.

On or about November 25, 1969, Lee and the Kimuras submitted a written offer to lease the property described in the 1970 leases. This offer was accepted by the lessors in part pursuant to their respective policies that Lee, as a former long-term tenant of one of them, had a "right of first refusal." Neither Lee nor the Kimuras paid consideration to obtain the 1970 leases. After the execution of the leases on January 5, 1970, the Kimuras continued to collect and treat as their own all of the rental income from the leased properties.

The 1970 leases required the lessees to commence substantial and workmanlike repairs to the buildings, which were badly run down. This the Kimuras did at a cost of approximately $20,000.00. Lee was neither asked to nor did she offer to pay for the repairs.

Lee was first heard to complain about the Kimuras' retaining all of the rental income sometime in 1973, apparently in response to her perception of a lack of gratitude and solicitousness. On August 9, 1973, Lee's attorney wrote a letter to the Kimuras demanding, *inter alia,* an accounting of the rents received and all profits due Lee.

The Kimuras never agreed to pay Lee any of the profits demanded. However, discussions did take place in an attempt to resolve the family dispute. The Kimuras had talked about paying Lee $500.00 a month in settlement, and in fact paid her $1,500.00, but nothing definite was concluded and no agreement was ever signed.

On November 8, 1977, Lee filed suit for an accounting of all rents and profits received under the leases and a share of the income and for partition, or in the alternative for a voiding of the Kimuras' interests in the leases. Lee asserted that the leases were part of a business arrangement whereby she would share profits on a fifty-fifty basis in return for the Kimuras' promise to maintain and manage the premises and that there was never a donative intent on her part.

On March 8, 1979, the Kimuras filed a counterclaim for

---

[1] The date in the findings of fact was incorrectly stated as May 1, 1970.

reformation of the leases to show Lee as guarantor and the Kimuras as lessees.

On June 6, 1979, after a jury-waived trial, the trial court entered judgment in favor of the Kimuras, finding that Lee and the Kimuras entered into a binding oral agreement in which Lee agreed to lend her name as "accommodation party" to obtain the 1970 leases, that Lee had no right, title, or interest in the leases, and that the leases were solely vested in the Kimuras. The judgment ordered Lee to execute an assignment of the leases to the Kimuras.

Lee filed a motion for a new trial pursuant to Rule 59 of the Hawaii Rules of Civil Procedure (HRCP) which, after a hearing, was denied. Lee appeals.

Lee argues that finding of fact 13 and conclusion of law 3 were in error. Finding of fact 13 is as follows:

13. The oral agreement between Plaintiff and Defendants does not vary, control or contradict the terms of the written leases bur [sic]merely serves to establish the true relationship between the parties on one side of the agreement, namely, the lessees. Hence, evidence of the oral agreement is not barred by the Parol Evidence Rule:

Conclusion of law 3 is as follows:

3. The oral agreement between Plaintiff and Defendants does not vary, control or contradict the terms of the written leases but merely serves to establish the true relationship between the parties on one side of the agreement, namely, the lessees. Hence, evidence of the oral agreement is not barred by the Parol Evidence Rule.

At trial Lee did not object to the use of parol evidence. It is a well-settled principle in this jurisdiction that objections not made to the admission of parol evidence are deemed waived. *Okuhara v. Broida,* 51 Haw. 253, 456 P.2d 228 (1969).

The proposition that the protection of the parol evidence rule, like our constitutional protections, can be waived, is a reasonable one. It strengthens the judicial ideal of finding the true intent and meaning of the parties because it allows the finder of fact to examine all facts and circumstances the parties deem relevant to the determination of their rights. It is further consistent with the practical administration of the law because a contrary rule prohibiting waiver would always enable the party who

should have objected and did not, a chance for retrial.

> . . . once admitted without objection, extrinsic evidence is entitled to full consideration in determining the true intent of the parties.

*Id.* at 257.

Even if the proper objections had been made, however, parol evidence does not operate to exclude evidence as to the true relationship between the parties on one side of a written agreement; that relationship is collateral to the written instrument. A lease is a written contract as between the lessor and lessees but is not a contract between the lessees. The agreement between Lee and the Kimuras does not affect the terms of the written leases but only speaks to that which is silent in the leases. *See Jardin v. Doucet,* 34 Haw. 651 (1938); *Barnes v. De Fries,* 24 Haw. 401 (1918). The agreement between Lee and the Kimuras as to their rights under the leases is clearly collateral to the lease documents themselves; thus, parol evidence is admissible.

Lee next contends that the court erred in findings of fact 7, 8, 9, and 17 and conclusions of law 2, 5, and 6 wherein the court found and concluded that she signed the 1970 leases merely as an "accommodation party" but otherwise had no right, title, or interest in the leases. Lee further argues that findings of fact 7, 8, 9, and 17 are not findings of fact but that they are mixed findings of fact and conclusions of law, thus being subject to independent examination by the court of appeals and not subject to HRCP, Rule 52(a)'s clearly erroneous rule. We cannot agree and will thus examine the findings of fact under HRCP, Rule 52(a).

Findings of fact 7, 8, 9, and 17 are as follows:

7. Shortly before May 1969, Plaintiff orally transferred all of her right, title and interest in the property under the 1958 lease to Defendants and from May 1, 1970 [1969] through the end of that year, Defendants with the knowledge and acquiesence [sic] of Plaintiff collected the rental income from the property and kept it as their own and paid all expenses connected with the property.

8. In October 1969, Magoon Brothers Limited and Magoon Estate Limited received offers from persons interested in leasing the properties described in the 1970 leases. Plaintiff, who was no longer interested in leasing the property herself and had already

transferred all of her right, title and interest therein to Defendants in May 1969, offered to help Defendants obtain new leases to the properties by lending her name as an accommodation party to induce Magoon Brothers Limited and Magoon Estate Limited to enter into the lease agreements with Defendants.

9. It was expressly understood and agreed as between Plaintiff and Defendants that Plaintiff, by executing the leases as an accommodation party, would have no right, title and interest in the leased properties, nor would she be responsible for any of the lease obligations, said obligations being the sole responsibility of Defendants.

17. By reason of the agreement between Plaintiff and Defendants whereby Plaintiff executed the leases with Magoon Brothers Limited and Magoon Estate Limited solely as an accomodation [sic] party to assist Defendants in obtaining said leases Plaintiff has no right, title or interest under said leases and she is not entitled to any portion of the rents or profits from the demised premises nor for an accounting of such rents and profits.

Lee contends that the trial court erred in finding that Lee signed as an accommodation party without any right, interest, or title in the 1970 leases. While we agree with Lee that the term "accommodation party" relates to negotiable paper[2] and would not so characterize Lee's signing of the leases by that term, the concept of Lee's signing as a guarantor is valid, and the record fully supports the conclusion that Lee signed the leases only to aid the Kimuras in obtaining them.[3]

It is true that as far as the lessors are concerned, Lee is a party to the leases. It is equally true that Lee lent her name to help the

---

[2] HRS § 490:3-415(1) reads as follows:

§490:3-415 *Contract of accommodation party.* (1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.

[3] The leases have Lee, Belle Kimura, and Masamitsu Kimura identified as lessees. At the most, Lee could have had no more than one-third of an interest as Belle and Masamitsu did not sign as husband and wife as tenants-by-the-entirety but signed individually. *See* HRS § 509-1. Even if we view the three signees as tenants-in-partnership, in the absence of an agreement to the contrary, partners are deemed to share profits and losses equally. Uniform Partnership Act § 118(a); HRS § 425-118(a).

Kimuras to obtain the leases and, as between Lee and the Kimuras, Lee did not have an interest in the leases.

The findings alleged as erroneous comprised the court's assessment of the amount of credibility to be ascribed to the testimony of the witnesses at the trial and we are bound by that. *Lennen and Newell, Inc. v. Clark Enterprises, Inc.*, 51 Haw. 233, 456 P.2d 231 (1969); *Wick Realty, Inc. v. Napili Sands Maui Corp.*, 1 Haw. App. 448, 620 P.2d 750 (1980); *Title Guaranty Escrow Services, Inc. v. Powley*, 2 Haw. App. 265, 630 P.2d 642 (1981). The credibility of the witness is a matter for the trial court to determine and the court can accept or reject the testimony of a witness in whole or in part. *Shinn v. Yee*, 57 Haw. 215, 553 P.2d 733 (1976); *Michely v. Anthony*, 2 Haw. App. 193, 628 P.2d 1031 (1981).

As the findings of fact are substantially supported by the evidence and the conclusions of law[4] based on the findings of fact are in accord with Hawaii law, we affirm.

Lee asserts a number of errors in the trial court's denial of her Rule 59, HRCP, motion for a new trial. When reviewing an order denying a motion for a new trial, "[t]he trial court has very broad discretion and the appellate courts will defer a great deal to his [or her] exercise of this discretion, "WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: *Civil* § 2818 on Rule 59(a) at 118 (1973).

Lee first contends that the Kimuras' unfulfilled compromise agreement constituted an admission by the Kimuras of Lee's interest in the leases. Since Lee did not prove the existence of a compromise agreement, we do not reach the question as to whether

---

[4] Conclusions of law 2, 5, and 6 are as follows:

2. Prior to executing the 1970 leases with Magoon Estate Limited and Magoon Brother Limited, Plaintiff and Defendant entered into a binding oral agreement by the terms of which, Plaintiff agreed to lend her name as an accommodation [sic] party to assist Defendants in obtaining the leases from the lessors but that after the execution of said lease documents, Plaintiff as between herself and Defendants would have no right, title or interest in said leases.

5. The oral agreement between Plaintiff and Defendants is binding upon Plaintiff and Defendants.

6. By reason of the agreement between Plaintiff and Defendants, Plaintiff is not entitled to any portion of the rents or profits from the demised premises nor for an accounting of such rents and profits, but Defendants are entitled to an assignment to them of all of Plaintiff's right, title and interest in and to the demised premises and the 1970 leases.

a compromise agreement constitutes an admission. Rather, the court found from the totality of the evidence that negotiations for settlement broke down before any settlement was reached.

Lee next contends that there could not have been an accommodation agreement as there was no consideration. Under Rule 8(c), HRCP, the failure of consideration is an affirmative defense and must be pled specifically. Lee failed to so plead.

Lee next argues that the statute of frauds prohibits an oral accommodation agreement to transfer interest in the leases. Again, under Rule 8(c), HRCP, the statute of frauds is an affirmative defense which Lee failed to plead. Moreover, Lee did not object to the Kimuras' evidence of the oral agreement. *See* HRCP, Rules 8(c) and 12(b); *see also* 2 A. CORBIN, *Contracts* § 320 (1950); *Okuhara v. Broida,* 51 Haw. 253, 456 P.2d 228 (1969); *Carter v. Notley,* 32 Haw. 183, 187 (1931).

> "The defense of the statute is a personal one which may undoubtedly be waived by the defendant, and unless he sets up the statute and relies on it by some proper pleading, he thereby impliedly waives the objection that the contract was not in writing." 25 R. C. L. 742. "Under the generally prevailing rule that an oral contract within the statute of frauds is not void or illegal, but merely voidable, and that the statute affords a defense personal to the party sought to be charged, which cannot be availed of by anyone else, the defense of the statute may be waived by the party entitled thereto, as by failure to raise the objection by proper pleading, objection to evidence, or otherwise in accordance with the prevailing local practice." 27 C. J. 337.

*Id.* at 187.

Additionally, the performance of the Kimuras in making substantial repairs to the property, paying the rent and taxes and collecting rental income and relying upon an oral agreement takes the case out of the statute of frauds. *See De Luz v. Ramos,* 31 Haw. 799 (1931). "[A]n oral contract with respect to an interest in land becomes enforceable, in spite of the Statute of Frauds, if there has been part performance." *Perreira v. Perreira,* 50 Haw. 641, 642, 447 P.2d 667 (1968). *See generally* 2 A. CORBIN §§ 400-443 (1950). *See also* Restatement (Second) of Contracts § 217A (Rev. Tent. Draft No. 1, 1973). It is noteworthy that Lee had acquiesced in the Kimuras' retention of profits years before she began to assert a demand for

the profits.

Lee next contends that her deposition should not have been entered into evidence as an admission against interest[5] as Lee is not fluent in English, did not have an interpreter at the deposition, and did not fully understand the questions asked of her.[6] At the time the deposition was taken, Lee neither asked for an interpreter nor objected that she did not understand the questions. Although objections to the competency of the witness or testimony are not waived by failure to make them before or during the taking of the deposition, where the ground of an objection could have been removed if presented at that time, then the objection is waived. *See* HRCP, Rule 32(d)(3)(A); WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: *Civil* § 2156 on Rule 32 (1970). Lee cannot be heard now to argue that she did not understand the questions since she was adequately represented by counsel at the deposition and has transacted business in English, including the two leases which are the subject of this suit. *See* HRCP, Rule 32(d), as to errors in deposition taking and HRCP, Rule 32(a)(2), as to the use of the deposition of the party. *See also* 4A MOORE'S FEDERAL PRACTICE ¶ 32.04 at 32-15 through 32-22 and ¶ 32.09 at 32-39 through 32-43 (2d. ed. 1981); Rule 603.1 and Commentary, Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes (1980).

Additionally, at trial, Lee, although objecting to the admission of the deposition, failed to state a specific ground for the objection. The ground for an objection must be specifically stated in order to preserve a point for appeal. *See* HRCP, Rule 46; WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: *Civil* § 2473 on Rule 46 (1971).

"[B]oth the grant or denial of a motion for a new trial . . . is within the trial court's discretion and will not be reversed absent a clear abuse of discretion." *Stahl v. Balsara,* 60 Haw. 144, 152, 587 P.2d

---

[5] The record before us does not indicate that the deposition was actually admitted into evidence. Rather, the court clerk entered it as an exhibit at 2:25 p.m., June 6, 1979, some three-and-one-half hours after judgment was entered on June 6, 1979, at 11:20 a.m. Depositions not offered in evidence cannot be considered as part of the record on appeal. *See* 4A MOORE'S FEDERAL PRACTICE ¶ 32.09 (2d. ed. 1981 and supp.). However, both Lee and the Kimuras refer to the deposition in this appeal as though it were admitted before judgment and no one has objected to the late entry so we will consider it as if it were admitted prior to the judgment.

[6] At the deposition Lee seemed to indicate she gave the leases to the Kimuras.

1210 (1978); *Harkins v. Ikeda,* 57 Haw. 378, 380, 557 P.2d 788, 790 (1976). Here, we do not find an abuse of discretion.

All other points of error have been fairly considered by this court and are found to be without merit.

We affirm the judgment below.

*Matthew T. Ihara (Stanley S. Mah* with him on the briefs; *Sterry, Mah & Gallup* of counsel) for plaintiff-appellant.

*Robert M. Ehrhorn, Jr., (Okumura, Takushi, Funaki, Wee* of counsel) for defendants-appellees.