HARRY T. SOUKOP, Plaintiff-Appellee, *v.* BURT L. SNYDER, Defendant-Appellant, and SPENCER, SNYDER & STIRLING, a Hawaii partnership; WILLIAM G. DuMOND; MEL T. MULLANEY; FOUNDERS TITLE AND ESCROW OF HAWAII; and DL ENTERPRISES, INC., Defendants

NO. 10393

(CIVIL NO. 70038)

OCTOBER 15, 1985

BURNS, C.J., HEEN AND TANAKA, JJ.

## OPINION OF THE COURT BY TANAKA, J.

Defendant Burt L. Snyder (Snyder) appeals the summary judgment in favor of plaintiff Harry T. Soukop (Soukop). The judgment awarded Soukop damages for Snyder's breach of a "guarantee" agreement. Snyder asserts that since there are genuine issues of material fact in the record, summary judgment was improper. We agree and reverse.

The following facts are not in dispute. DL Enterprises, Inc. (DL) is a Hawaii corporation "established to set up an airline to be known as Sun Island Airways." Snyder is a licensed Hawaii attorney who was a partner in a law firm known as Spencer, Snyder & Stirling (Law Firm). In 1980, Snyder was the president of DL while William G. DuMond (DuMond) and Mel T. Mullaney (Mullaney) were officers.

On October 30, 1980, DL, as the "prospective general partner," and Soukop, as a "prospective limited partner," executed an "Agreement to Participate in Limited Partnership" (October 30 Agreement). The October 30 Agreement provided for the formation of a limited partnership on or before November 15, 1980, and required Soukop to contribute $50,000 in exchange for a 1% limited partnership interest which entitled him to a portion of the investment tax credit and a share of the depreciation. It further provided:

> The prospective general partner shall be entitled to use any amounts contributed by prospective limited partner herein for the purpose of securing assets for the limited partnership, travel of prospective general partner or personnel of the business, promotion, purchase of printed materials, securing of personnel for the business all as may be determined necessary by the prospective general partner. If the business fails to commence for reasons within control of the prospective general partner, such amounts used along with any unused portion then remaining shall be due and owing to prospective limited partner as a debt of prospective general partner, guaranteed by the guarantors signing below, and shall be paid by it within 1 year of the determination that the business shall not commence and shall bare [sic] interest at the rate of 12% per annum until repaid, and prospective general partner hereby promises to pay such amounts. The term "failure of the business to commence" shall mean

the failure to fly aircraft in passenger service in Hawaii. Record, Vol. 3 at 146.

The October 30 Agreement included an integration clause. It also contained a guaranty clause which read:

> In consideration of the prospective limited partner's execution of this agreement and his contribution as set out above, the below signing guarantors hereby guaranty the covenants of the prospective general partner.

Record, Vol. 3 at 147. Snyder signed the October 30 Agreement as president of DL and as a guarantor. DuMond and Mullaney also signed as guarantors. Soukop gave Snyder two cashier's checks—one in the amount of $10,000 made payable to DL and the other in the amount of $40,000 made payable to First Escrow Corporation, later known as Founders Title and Escrow of Hawaii (Founders Title).

On November 3, 1980, Snyder drafted and he and Soukop signed another agreement (November 3 Agreement). It consisted of a single page and read as follows:

> It is agreed that Harry Soukop will contribute $50,000 to the proposed limited partnership pursuant to the agreement executed by him and DL ENTERPRISES, INC.. Burt L. Snyder has agreed and does guarantee that if the venture proposed fails that he will repay to Soukop the full investment of $50,000.
>
> In addition, if the venture succeeds, but because of unforeseen circumstances, the IRS disallows the tax treatment mentioned in the participation agreement, Burt L. Snyder guarantees that Soukop will receive his investment back in full in the event the tax treatment is disallowed which substantially impairs his investment.
>
> As for the contribution, the funds shall be placed into the money management account of E.F. Hutton. All interest earned shall be to Soukop's account and shall be paid to him when added to the account. The total amount placed is $60,000, $10,000 as his personal account and $40,000 to be placed through First Escrow and the remaining $10,000 to be to DL Enterprises' account to be used for business purposes.

Record, Vol. 3 at 148.

There was a "failure of the business to commence." In fact, the limited partnership was never formed.

On March 10, 1982, Soukop commenced this action against Snyder, DuMond, and Mullaney for breach of their guaranty agreements. His

second amended complaint named Snyder, the Law Firm, DuMond, Mullaney, Founders Title, and DL as defendants and contained 16 separate "causes of actions" (hereinafter "counts"). Count 5 alleged the breach of the November 3 Agreement by Snyder.[1]

On December 8, 1983, Soukop filed a motion for partial summary judgment as to count 5 only. On May 1, 1984, the trial court granted Soukop's motion. On November 27, 1984, the court entered its order directing the entry of final judgment on count 5 pursuant to Rule 54(b), Hawaii Rules of Civil Procedure (HRCP) (1981), and a judgment for $71,037.06 ($50,000 plus interest, costs, and attorney's fees) was filed on the same day. Snyder's timely appeal followed.

## I.

Summary judgment is proper only "where, from the record, there is no genuine issue as to any material fact and movants clearly demonstrate they should prevail as a matter of law." *Hulsman v. Hemmeter Development Corp.,* 65 Haw. 58, 61, 647 P.2d 713, 716 (1982). *See* Rule 56(c), HRCP (1981); *Iuli v. Fasi,* 62 Haw. 180, 613 P.2d 653 (1980); *Carrington v. Sears, Roebuck & Co.,* 5 Haw. App. 194, 683 P.2d 1220 (1984). Additionally, the evidence in the record and the inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Fernandes v. Tenbruggencate,* 65 Haw. 226, 649 P.2d 1144 (1982); *Kang v. Charles Pankow Associates,* 5 Haw. App. 1, 675 P.2d 803 (1984).

The foregoing standards are also applicable on appellate review. *Fernandes v. Tenbruggencate, supra.* Applying them to the evidence in the record of this case, we hold that there are genuine issues of material fact with respect to Snyder's defense of lack of "valid consideration" to

---

[1] The other counts alleged *inter alia,* misrepresentation, unfair and deceptive trade practices, breach of the guaranty in the October 30 Agreement, legal malpractice by Snyder and the Law Firm, breach of fiduciary duty by Founders Title, negligence by Snyder and the Law Firm, and violations of Hawaii's securities statutes.

The record indicates that Soukop's claims under the 15 other counts and the defendant's cross-claims against each other have been dismissed. Thus, only count 5 involved in this appeal remains at issue in the case.

support the November 3 Agreement.[2]

## II.

Both parties categorize the November 3 Agreement as a guaranty and apply the law of guaranty in their appellate discussions. We disagree and hold that the November 3 Agreement is not a contract of guaranty.

Generally, a "contract of guaranty is an enforceable undertaking or promise on the part of one person which is collateral to a principal obligation of another and which binds the guarantor to performance in the event of nonperformance by the principal debtor [or obligor]." *Waikiki Seaside, Inc. v. Comito,* 3 Haw. App. 103, 106, 641 P.2d 1363, 1365 (1982). *See also Hawaii Leasing v. Klein,* 5 Haw. App. 450, 698 P.2d 309 (1985); *Liberty Bank v. Shimokawa,* 2 Haw. App. 280, 632 P.2d 289 (1981), *cert. denied,* 454 U.S. 1146, 102 S. Ct. 1009, 71 L. Ed. 2d 299 (1982). A guaranty's distinguishing feature "is that the obligation is collateral to another contractual duty to perform. Thus, if the obligation sought to be enforced is a primary or unconditional promise so that the promisor is primarily liable regardless of the failure of some other party to perform his contractual duty, the conclusion is that the obligation is not a contract of guaranty." 38 Am. Jur. 2d *Guaranty* § 3 at 998 (1968). *See First Wisconsin National Bank of Milwaukee v. Oby,* 52 Wis. 2d 1, 188 N.W.2d 454 (1971).

Under the October 30 Agreement, DL had the contractual obligation to return Soukop's $50,000 only if the "failure of the business to commence" was "for reasons within control" of DL. The undertaking

---

[2]We find no merit in Snyder's argument that factual questions of the parties' intention and lack of mutual assent regarding the November 3 Agreement exist based on Snyder's affidavit which states that neither he nor Soukop intended that the "November 3, 1980 document would give rise to any new or different requirements, promises or responsibilities" from the October 30 Agreement. Record, Vol. 4 at 160. The supreme court has stated that "the construction and the legal effect to be given a contract is a question of law to be decided by the court." *Reed & Martin, Inc. v. City & County,* 50 Haw. 347, 348-49, 440 P.2d 526, 527 (1968). Intent becomes a question of fact only where the language of the contract is ambiguous and casts a doubt as to the intent of the parties. *Bishop Trust Co., Ltd. v. Central Union Church of Honolulu,* 3 Haw. App. 624, 656 P.2d 1353 (1983).

The language of the November 3 Agreement is clear and unambiguous. Thus, its construction and legal effect being questions of law, Snyder's extrinsic evidence of intent is irrelevant.

within that agreement by Snyder, DuMond, and Mullaney to "guaranty the covenants" of DL is a contract of guaranty.

In the November 3 Agreement, Snyder promised to repay the $50,000 to Soukop (1) "if the venture proposed fails" or (2) if, despite the venture's success, "the IRS disallows the tax treatment mentioned in the participation [October 30] agreement." This undertaking by Snyder is primary. It is not *collateral* to DL's contractual duty to return Soukop's $50,000 under the October 30 Agreement.

Since the November 3 Agreement is not a contract of guaranty, we will apply the general law of contracts in our analysis.

III.

The November 3 Agreement recites that Soukop "will contribute $50,000 to the proposed limited partnership" pursuant to the October 30 Agreement. Snyder contends, however, that since Soukop paid the $50,000 when the October 30 Agreement was signed, a "new and independent consideration" is necessary to support the November 3 Agreement. Snyder claims that the November 3 Agreement cannot be supported by "past consideration" and thus "fails for lack of consideration" as a matter of law.

We are aware that "[a] promise cannot be supported by a past or executed consideration." *Kaleialii v. Grinbaum & Co.,* 9 Haw. 213, 216 (1893). In this case, however, Soukop's allegation of fact is that the October 30 and November 3 Agreements constitute a "contemporaneous" transaction bargained for by the parties which induced his paying the $50,000. Consequently, Soukop asserts that the $50,000 was the consideration supporting the promises contained in both agreements.

Professor Corbin states:

A single and undivided consideration may be bargained for and given as the agreed equivalent of one promise or of two promises or of many promises. The fact that there are many promises given in exchange for the one consideration does not make it insufficient as to any of them. If it would be sufficient to support each of the promises taken separately, it is sufficient for all of them. This is true whether the two or more promises are made by the same person or by different persons.

A. Corbin, *Corbin on Contracts* § 125 at 535-36 (1963). *See also* Restatement (Second) of Contracts § 80 (1981); 17 Am. Jur. 2d *Contracts* § 101

(1964); *Mitchell v. Lawson,* 444 S.W.2d 192 (Tex. Civ. App. 1969).

The general rule is that even though the parties' written agreement appears to be completely integrated, "[e]vidence is admissible to prove whether or not there is consideration for a promise[.]" Restatement (Second) of Contracts § 218(2) (1981). *See also* 30 Am. Jur. 2d *Evidence* § 1056 (1967). Thus, the parol evidence rule does not preclude Soukop from proving that his negotiations with Snyder resulted in his agreement to pay $50,000, thereby becoming the bargained for consideration to support DL's promises and Snyder's, DuMond's and Mullaney's guaranty in the October 30 Agreement as well as Snyder's promise in the November 3 Agreement. Soukop so stated in his affidavit attached to the December 8, 1983 motion for partial summary judgment. However, in the counter-affidavit attached to his memorandum in opposition, Snyder stated that the November 3 Agreement was drafted and signed at Soukop's insistence and merely "duplicate[d] the terms of the guaranty" in the October 30 Agreement. Record, Vol. 4 at 159. Snyder, in essence, denied any bargained for consideration for his promises in the November 3 Agreement.

Thus, there is a genuine dispute on a crucial issue in the record—whether the $50,000 Soukop agreed to pay was the bargained for consideration for both the October 30 and November 3 Agreements or for only the October 30 Agreement. Credibility—whether Soukop or Snyder is worthy of belief—is a matter for the trier of fact. Consequently, the trial court erred in granting a summary judgment to Soukop.

Reversed and remanded for trial.

*Alexander C. Marrack (Patrick K. Wall* with him on the briefs; *Hoddick, Reinwald, O'Connor & Marrack,* of counsel) for defendant-appellant.

*Boyce R. Brown, Jr. (Mary Blaine Johnston* and *Allan F. Suematsu* on the brief; *Brown & Johnston,* of counsel) for plaintiff-appellee.